UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff/Respondent, | ) | No. 0:10-CR-1-DLB-1 |
| | ) | No. 0:11-CV-7183-DLB-REW |
| v. | ) | |
| | ) | ORDER |
| ANDREA CLICK, | ) | |
| | ) | |
| Defendant/Movant. | ) | |

*** *** *** ***

On September 28, 2011,[1] Defendant, Andrea Click, filed a *pro se*[2] motion under §

2255 to "Apply Credit for Time Already Served, Good Conduct Time and Concurrent

State Time to Defendant's Federal Prison Sentence."  DE #73 (Motion).   The United

States did not respond to the merits of the motion but instead moved to dismiss.  DE #75

(Motion to Dismiss).  Click replied via counsel.  DE #80 (Reply).  The motion stands ripe

and ready for review.

---

[1] This filing date reflects the postmark on the envelope.
[2] *Pro se* petitions receive a comparatively lenient construction by the Court.  *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, 'though vague and conclusory, are entitled to a liberal construction'" including "active interpretation toward encompassing an allegation stating "federal relief").  Click's motion states that she is "appearing *pro se* with the assistance of Omar Ahmad, Esq."  DE #73 (Motion).  Upon its initial review of the motion, the Court noted that Ahmad did not appear to be admitted in Kentucky and recommended that Click and Ahmad "review and abide by the applicable rules and statutes, and decisions interpreting them, in all proceedings."  DE #74 (Order) at 1 n.1.  Ahmad eventually, and prior to filing a reply, moved for *pro hac vice* admission, which the Court granted.  DE #78 (Order).  Accordingly, the Court considers Click's motion as one filed *pro se*, but Movant filed her reply by and through counsel.

The District assigned the matter to the undersigned for a recommended disposition.  Click is in the wrong court for most of the relief she seeks.  She has waived such claims as actually fall under § 2255.  For the reasons discussed below, the Court **RECOMMENDS** as follows:

(1) The District Judge **CONSTRUE** the motion as a hybrid arising under both 28 U.S.C. § 2255 and 28 U.S.C. § 2241[3];

(2) The District Judge **GRANT** the United States's motion to dismiss (DE #75) as it pertains to Click's claims arising under § 2255, namely any attack on her guilty plea and any ineffective assistance claim and **NOT** issue a Certificate of Appealability.  A valid waiver precludes Click's claims, which also are unsupported by the record; and

(3) The District Judge **DISMISS WITHOUT PREJUDICE** the remainder of Click's claims, namely those arising under § 2241.  The Court lacks jurisdiction to review Click's relief requests in that category.

## I.     Background Information

A federal grand jury indicted Defendant on January 21, 2010.  DE #1 (Indictment).  Count one charged Click with conspiring with a named co-defendant, from a date in 2007 to April 18, 2008, in Boyd County, to distribute a mixture or substance containing a detectable amount of oxycodone, a Schedule II controlled substance, in violation of 21 U.S.C. §§ 841(a)(1) and 846.  Counts two and three alleged individual

---

[3] The Court notes that Click did not pay the $5.00 filing fee.  *See* 28 U.S.C. § 1914 (establishing a $5.00 filing fee for a petition for a writ of habeas corpus).  The Court does not recommend dismissal on this ground given the nature of the overall recommended disposition.

distribution of oxycodone in Boyd County, on June 21, 2007, and April 18, 2008, respectively. Click appeared before the Court on February 23, 2010, on a writ of habeas corpus ad prosequendum. In light of an undischarged state term, United States Magistrate Judge Edward B. Atkins remanded Defendant to custody pending trial. DE #7 (Minute Entry).

On April 12, 2010, District Judge Bunning rearragined Click on count one of the Indictment. DE #25 (Minute Entry). On July 12, 2010, Judge Bunning sentenced Defendant to 60 months imprisonment, 36 months concurrent to the undischarged state term in Boyd Circuit Court Case 08-CR-365-366 and 24 months consecutive to such term. DE #36 (Judgment).

Click, proceeding *pro se*, wrote to Judge Bunning on December 20, 2010. DE #65 (Letter). The letter requested various forms of relief pertaining to sentence credit and a sentencing enhancement. *Id.* Judge Bunning construed Defendant's correspondence as a motion for miscellaneous relief and denied the motion without prejudice. DE #65 (Order). The Order directed Defendant to § 2241 as the proper vehicle for seeking judicial review of sentencing credit. Click filed the instant motion under §2255 on September 28, 2011. DE #73. In response, the United States filed a motion to dismiss (DE #75), and Defendant, by counsel, filed a reply (DE #80).

## II.     Standard of Review

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if a sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In

order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))).  A defendant alleging a constitutional violation must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999). When alleging a non-constitutional error, a defendant must prove the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471  (1962)); *see also Watson*, 165 F.3d at 488.  In making a § 2255 motion, a movant bears the burden of proving his or her contentions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

III.    **Section 2255 Analysis**

In this hybrid[4] petition, Click generally premises § 2255 relief requests on alleged ineffective assistance of trial counsel.  DE #73 (Motion).  Click's valid waiver precludes her motion.  Alternatively, based on the record, Movant has failed to properly allege, let

---

[4] So called because, charitably construed, it contains substantive § 2255 theories along with credit calculation arguments reserved for a § 2241 petition.

alone prove, by a preponderance of the evidence that counsel provided ineffective assistance. Thus, Click is not entitled to relief under 28 U.S.C. § 2255.

    A.  *Timeliness*

At the outset, the Court notes that, to the extent Click alleges claims under § 2255, those claims appear to be time-barred. On April 24, 1996, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) became effective. Section 2255 reads in relevant part:

> A 1-year period of limitation shall apply to a motion under this section.
>
> The limitation period shall run from the latest of --
>> (1) the date on which the judgment becomes final;
>> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution of laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). District Judge Bunning entered judgment on July 12, 2010. DE #36 (Judgment). Click did not directly appeal; she filed the instant hybrid petition on September 28, 2011.

Click filed the § 2255 motion beyond the one-year statute of limitations. Defendant had until July 26, 2010, to timely file her notice of appeal but made no filing. *See* Fed. R. App. P. 4(b)(1) (2010 ed.) (outlining fourteen-day requirement). Click's conviction thus became final on July 26, 2010. Accordingly, under subsection (f)(1),

Movant had 365 days in which to file a § 2255 motion.  Given that Movant did not file

until September 28, 2011, she late-filed the motion and missed the statute of limitations.

     The Court notes that even though Click was in custody on a (partly) concurrent

state and federal sentence[5], she did not have to be in exclusive federal custody in order to

avail herself of § 2255 relief.  *See Ospina v. United States*, 386 F.3d 750, 752 (6th Cir.

2004) ("If a prisoner is in custody and can, therefore, avail himself of § 2255 relief, and if

§ 2255 requires prisoners to use said relief before a statute of limitations runs, then the

statute of limitations should begin to run from the moment that the prisoner can use §

2255.  In other words, if a petitioner may use § 2255 while he is in state prison, he must

do so then to prevent the statute of limitations from barring his action.").   Whether

equitable tolling[6] could spare the claims is an open question and one the Court does not

address.

---

[5] The Commonwealth paroled Click on September 28, 2010.  She was paroled to the
federal sentence, although, while on parole, she continued to earn credit toward any
undischarged part of her state sentence.  *See* K.R.S. § 439.344 ("The period of time spent
on parole shall count as part of the prisoner's sentence . . . .").  None of the exceptions
detailed in § 439.344 that would prevent her from earning credit appears to apply on this
record.  *Id.*

[6] The AEDPA statute of limitations is not jurisdictional; therefore, equitable tolling may
be permissible in some circumstances. *See Holland v. Florida*, 130 S. Ct. 2549, 2560
(2010) (citing *Day*, 126 S. Ct. at 1681); *Allen v. Yukins*, 366 F.3d 396, 401 (6th Cir.
2004). However, the doctrine applies "sparingly," and the burden is on the defendant to
prove its applicability. *See Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003). In
evaluating whether to toll the AEDPA limitation period, the Supreme Court has
remarked, "Generally, a litigant seeking equitable tolling bears the burden of establishing
two elements: (1) that he has been pursuing his rights diligently, and (2) that some
extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 125 S. Ct. 1807,
1814 (2005). To this end, the Sixth Circuit considers the following five factors: (1) the
movant's lack of notice of the filing requirement; (2) the movant's lack of constructive
knowledge of the filing requirement; (3) diligence; (4) absence of prejudice to the
respondent; and (5) the movant's reasonableness in remaining ignorant of the legal
requirement to file the claim. *See Allen*, 366 F.3d at 401. Courts also evaluate a case for
the existence of "extraordinary circumstances" sufficient to warrant equitable tolling. *See*

The Court did not order briefing on, and mentions *sua sponte*, the issue of timeliness. The United States did not raise limitations. Because the issue is thus not formally before the Court, the Court **does not** make a finding or recommend dismissal based on timeliness. Additionally, the Court stresses that **only** Click's § 2255 claims are subject to the one-year statute of limitations; there is no statute of limitations on petitions filed pursuant to § 2241. *Wooten v. Cauley*, 677 F.3d 303, 306 (6th Cir. 2012). In the interests of justice, the Court does not recommend dismissal on timeliness.

### B. Waiver of Collateral Attack Right

The Court notes that Click's *pro se* motion does not, on its face, attack her guilty plea. Indeed, the motion is limited to argument for application of time-served credit, good time credit, and credit for concurrent state time to her federal prison sentence. DE #73 (Motion) at 1; DE #73-1 (Memorandum) at 11-12. Only in reply, and seemingly in direct response to the arguments asserted by the United States, does Click challenge her guilty plea. DE #80 (Reply). To the extent the reply attempts to inject new matters into the case, the Court denies that effort. Click's effort to challenge her plea appears first in reply and thus is not properly before the Court. The § 2255 petition is to contain "all the grounds for relief available," and raising a contention only in reply is improper. *See* Rules Governing Section 2255 Cases in the United States District Court, Rule 2(b)(1). Despite the posture of the claim, the Court alternatively proceeds to the merits and denies the relief request.

The United States argues that the claims raised in Click's § 2255 motion are not reviewable because she knowingly and voluntarily entered into a plea agreement, waiving

---

*United States v. Stone*, 68 F. App'x 563, 565-66 (6th Cir. 2003). The proper inquiry is case-by-case and fact-based. *See Holland*, 130 S. Ct. at 2562-63.

her right to appeal and collaterally attack her guilty plea and conviction and, conditionally, her sentence. DE #75 (Motion to Dismiss) at 1. The plea agreement states, "The Defendant waives the right to appeal and the right to attack collaterally the guilty plea, conviction, and sentence below or within the advisory Guideline range as finally determined by the Court." DE #35 (Plea Agreement) at 3, ¶ 7.

In the Sixth Circuit, an "informed and voluntary" collateral-attack waiver is enforceable. *In re Acosta*, 480 F.3d 421, 422 (6th Cir. 2007); *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. Cir. 1999); *see also United States v. Fleming*, 239 F.3d 761, 763-64 (6th Cir. 2001) (explaining that a defendant in a criminal case may waive any right via a plea agreement, including constitutional rights). The record in this case clearly supports waiver enforcement.

Here, Click acknowledged by executing the plea agreement that she had reviewed the document with counsel and understood its terms. DE #35 (Plea Agreement) at 4, ¶ 12. At rearraignment, Movant confirmed to the District Judge, under oath, that she had read the content of the plea agreement, reviewed it with her attorney, and signed it. DE #66 (Transcript) at 16. Additionally, the District Judge personally addressed Click and specifically discussed the collateral-attack waiver. *Id.* at 36.  Click affirmatively responded that she understood the provision. *Id.* at 36-37.

The record shows that Click's responses were voluntary and verified, and Judge Bunning determined at the hearing that Click was competent. *Id.* at 3-6, 42. Solemn declarations in open court "carry a strong presumption of verity" and "constitute a formidable barrier" in subsequent collateral proceedings. *Blackledge v. Allison*, 97 S. Ct. 1621, 1629 (1977). Considering the representations that Defendant made in the plea

agreement and during rearraignment, and the significance of her sworn statements, the Court can only conclude that Click made an "informed and voluntary" waiver. *In re Acosta*, 480 F.3d at 422.  Post-hoc dissatisfaction with result does not provide an avenue for a plea challenge.

Click argues in reply that her plea agreement ultimately was not consistent with her attorney's explanation of same. DE #80 (Reply).  Essentially, Click now claims that her plea agreement did not contain some of the specific terms that Mr. Markelonis "assured" her would be included.  *Id.* at 6.  Defendant alleges that Mr. Markelonis represented to her that she only would spend approximately two years in federal prison if she entered the plea agreement.  Further, Click also asserts that she was "lead to believe that the gun enhancement would be removed."  *Id.*  Per Click, Mr. Markelonis acknowledged that "the absence of those two conditions was a mistake when Ms. Click initially contacted him."  *Id.*  The United States does not directly address Defendant's allegations in response but does cite the rearraignment transcript for various propositions, including that Click denied that anyone had made any promises to her that were not contained in the written plea agreement and further denied that she had been forced or coerced into pleading guilty.  DE #75 (Motion to Dismiss).

Indeed, at rearraignment, Click confirmed satisfaction with the advice, counsel, and representation of her lawyer.  DE #66 (Transcript) at 16.  She acknowledged that she had read the plea agreement and discussed it with her attorney.  *Id.* at 17.  She expressly denied that anyone made promises to her not contained within the plea agreement or supplement.  *Id.* at 17.  After AUSA Jason Denney orally summarized the plea agreement, specifically noting the two-level enhancement for possession of a firearm,

Click confirmed the recitation as reflecting her plea agreement. *Id.* at 22. In explaining the Guidelines, Judge Bunning addressed Defendant and again discussed the two-level gun enhancement. Click again confirmed her understanding. *Id.* at 26. Her positions now simply do not square with the verified record.

Click's reliance on *Spence v. Superintendent, Great Meadow Correctional Facility*, 219 F.3d 162 (2d Cir. 2000) is misplaced. In *Spence*, the defendant did not have a written plea agreement and the only record of terms was the transcript of the defendant's allocution. *Id.* at 168. In that case, the judge specifically explained and gave meaning to particular terms of the plea agreement. The Second Circuit thus concluded that, under contract law, the court must "look to what the parties reasonably understood the terms to mean, and resolve any ambiguity in the agreement in favor of the defendant" when construing promises made in return for a plea. *Id.* at 167. Here, however, Click entered into a written plea agreement with defined terms and denied having **any other** agreement outside the written terms. Thus, while Click may have hoped for a different result based on unspecified statements from her attorney, the record plainly contradicts her claim.

In sum, Click does not offer sufficient proof to show that she entered into her plea agreement unwillingly or unknowingly, and the Court finds the waiver effective. Click well understood the application of the two-level enhancement. She denied additional promises under oath. The plea agreement was silent on the issue of a concurrent/consecutive sentence. Further, as explained by Judge Bunning at rearraignment, any sentencing recommendation by the United States was only a recommendation and not binding on the Court. Click may be disappointed in the result,

but the waiver contained within her plea agreement is enforceable. However, in the interests of justice,[7] the Court considers Click's additional arguments.

### C. Ineffective Assistance

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65.  Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the

---

[7] *Acosta*, of course, places logical limits on enforcement. If a waiver or guilty plea results from ineffective assistance or is unknowing/involuntary, *Acosta* would not enforce. *In re Acosta*, 480 F.3d at 422 n.1. Notably, Click does not effectively impugn (or even mention) the waiver itself. She confessed voluntariness under oath, and confirmed her understanding of plea agreement terms.

judge or jury." *Id.* at 2069. In the context of a guilty plea, prejudice requires a movant to

show that a "reasonable probability exists that, but for counsel's errors, defendant would

not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*. 106

S. Ct. 366, 370 (1985). With respect to sentencing, in some circumstances establishing a

mere difference in outcome does not suffice to establish prejudice. *Glover v. United*

*States*, 121 S. Ct. 696, 700 (2001) (citing *Lockhart v. Fretwell*, 113 S. Ct. 838 (1993)

("The touchstone of an ineffective-assistance claim is the fairness of the adversary

proceeding, and 'in judging prejudice and the likelihood of a different outcome, [a]

defendant has no entitlement to the luck of a lawless decision maker.'") (citations and

internal quotation marks omitted)).

Click vaguely and generally asserts that counsel ineffectively assisted her by

failing to ensure that, pursuant to a guilty plea, she would spend approximately no more

than two years in prison[8] and be able to "avail herself of certain benefits and programs

offered by the prison in an honest effort to rehabilitate herself and make the most positive

use of her time while incarcerated."  DE #80 (Reply) at 6.   Again, to the extent Click

only raises the claim in reply, the Court denies that effort.  Her assertions of ineffective

assistance appear first in reply and thus are not properly before the Court.  *See* Rules

Governing Section 2255 Cases in the United States District Court, Rule 2(b)(1).

Regardless, Click is not entitled to relief.  She does not properly assert, let alone

prove, her claim.  Movant makes conclusory and perfunctory allegations about lack of

effort by counsel, but the record refutes her claims. At rearraignment, Judge Bunning

addressed Click and advised her that she would not be permitted to withdraw her guilty

_____

[8] Click cites an "Imprisonment Sheet" for this proposition, but the document is simply a
page in the Judgment and not part of the plea agreement.  *See* DE #73-4.

plea if the sentence she received was higher than she anticipated.  Click confirmed her

understanding.  DE #66 (Transcript) at 29.  She attested under oath her understanding of

the plea agreement as signed and denied any additional promises.  Click also affirmed her

approval of counsel's role and performance.  *See id.* at 15. Click may now regret her

choice to plead guilty, but she does not effectively blame her lawyer.  Indeed counsel

orchestrated a partially concurrent sentence of 60 months, which was 27 months below

the Guidelines' bottom after the Government's 5K motion.  Objectively, this diminishes

the credibility of any criticism of counsel on this record.

Defendant does not identify specific conversations with counsel or provide any

details about the alleged assertions/promises. She further does not articulate any basis on

which the Court could find a duty to correct any alleged "errors" in the plea agreement

post-sentencing.  In fact, Judge Bunning sentenced Defendant more favorably than the

United States recommended.[9]  Click gave voluntary and verified answers under oath and

acknowledged the very facts she now attacks. Defendant's unsupported and incredible

allegations are plainly contrary to the record, and she is not entitled to relief in the § 2255

context.

---

[9] At sentencing, during a sealed bench conference, AUSA Leonhard stated the following
regarding the United States's § 5K1.1 motion as applied to the issue of a
concurrent/consecutive sentence:

> The United States's recommendation is approximately one-third off the
> low end of her guidelines, which would take the Court to around 60
> months.  Our recommendation would be 60 months, and we would ask
> that it only be maybe 50% concurrent.

DE #71 (Sealed Transcript) at 3.  Click's attorney requested a fully concurrent sentence
in response.  *Id.*

IV.     **Section 2241 Analysis**

Click's petition principally raises several issues pertaining to the execution (not imposition) of her sentence.[10] Such claims are proper under 28 U.S.C. § 2241, and the Court thus recommends that the District Court construe Click's filing as a hybrid petition. *Woody v. Marberry*, 178 Fed. App'x 468, 471 (6th Cir. 2006) (citing *Capaldi v. Pontesso*, 135 F.3d 1122, 1123 (6th Cir. 1998)).   Petitions filed pursuant to § 2241 are not subject to a statute of limitations.  *Wooten*, 677 F.3d at 306.  As Judge Bunning earlier warned Click, a federal prisoner must, however, file the petition "in the district court having jurisdiction over the petitioner's custodian."  *Alvey v. United States*, 899 F.2d 1221, at *1 (6th Cir. 1990) (table).  As Click is incarcerated at FPC Alderson, Click should have filed her petition in the Southern District of West Virginia, and the Court lacks jurisdiction to review her claims.

Accordingly, the Court recommends that the District Judge dismiss without prejudice all claims arising under § 2241.[11]  *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").   Although the Court does not make any specific recommendation on the merits of the various sentencing claims, the Court's review indicates that Click is not, on the record as it now stands, entitled to relief. Accordingly,

---

[10] Challenges to a conviction and allegations of sentencing error are generally not cognizable under § 2241. *Jones v. Castillo*, No. 10-5376, 2012 WL 2947933, at *1 (6th Cir. July 20, 2012) (per curiam).  "An exception to this rule allows a federal prisoner to challenge his conviction and the imposition of sentence under § 2241 where the remedy under § 2255 is shown to be inadequate and ineffective. *Id.*  (citation omitted).  Click does not attempt any such showing.

[11] District Judge Bunning directly advised Click that, upon exhausting administrative remedies, motions relating to jail credit are "properly filed under 28 U.S.C. § 2241 in the district of incarceration."  DE #64 (January 4, 2011 Order).

the Court does not, on this record, find the interests of justice to support transfer of the petition. Click's claims appear meritless or are insufficiently supported.

### A. Administrative Exhaustion

Federal prisoners seeking relief pursuant to § 2241 must exhaust administrative remedies before seeking habeas relief. *Alton v. Bogan*, 57 F.3d 1069, 1069 (6th Cir. 1995) (table) (citing *Little v. Hopkins*, 638 F.2d 953, 953-54 (6th Cir. 1981)). The administrative remedy process appears in 28 C.F.R. §§ 542.10-542.16. First, a prisoner must submit her complaint informally to institutional staff. *See* 28 C.F.R. § 542.13(a). If the informal resolution process is not sufficient, the inmate must next submit a Request for Administrative Remedy to the prison warden. *See* § 542.13-.14. An inmate may appeal a warden's decision to the appropriate regional director and, if necessary, may appeal that decision to the general counsel. § 542.15. An appeal filed to the general counsel is the final administrative appeal. *Id.*

Click appears, on this record, to have exhausted her administrative remedies. On February 28, 2011, Click submitted a complaint to prison staff. *See* DE #73-10. Prison staff denied her request. *Id.* Click then sought relief via the administrative remedy coordinator, who rejected the request as untimely. DE #73-11. Click next submitted a BP10 form, received on March 28, 2011. The record does not reflect a disposition of this appeal. Finally, on April 4, 2011, Click wrote U.S. Attorney General Eric Holder and the administration remedy coordinator. DE #73-13. Warden Myron L. Batts responded to the letter on May 13, 2011, and denied the requested relief. DE #73-14. With these documented appeals, Click does appear to have exhausted her administrative remedies, although the Court does not have enough information to rule on the merits of exhaustion.

## B.  Eight Months of Credit

Click first requests that the Court apply eight months of jail credit to her federal sentence for "pre-sentencing and institutional transit time."  DE #73 (Motion); DE #73-1 (Memorandum) at 7-8.  Specifically, Click seeks credit for the six months she spent at the Carter County jail on the federal writ of habeas ad prosequendem and the two months she spent at the Kentucky Correctional Institute for Woman while awaiting transport to FPC Alderson.  DE #73-1 (Memorandum) at 7-8.

If a defendant is arrested by one sovereign, that sovereign has primary custody over the defendant even if the individual is taken elsewhere on a writ of habeas corpus ad prosequendum.  *Green v. Cauley*, No. 08-CV-145-HRW, 2009 WL 649549, at *3 (E.D. Ky. March 12, 2009) (collecting cases).  "The rationale is that the second sovereign has only 'borrowed' him and the State retains primary jurisdiction over him."  *Id.*  Click was thus in state custody during the arraignment process on the federal indictment and credit for that time served applied only to her state sentence.  *See id.* ("The court [in *Easley v. Stepp*, 5 Fed. App'x 541, 543 (7th Cir. 2001)] held that time spent in federal custody pursuant to the writ did not 'transmute' into federal custody, because a prisoner detained under such a writ remains in *primary* custody of the sending state '[u]ntil that sovereign state relinquishes jurisdiction over him.'" (first alteration added)).  This is wholly consistent with 18 U.S.C. §3585(b), which provides:

> (b) A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences--
>
> (1) as a result of the offense for which the sentence was imposed; or
>
> (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed;

**that has not been credited against another sentence.**

18 U.S.C. §3585(b) (emphasis added).

Click's interpretation of §3585(b) is incomplete; she does not consider the above-emphasized language that prohibits pre-sentencing credit from counting against more than one sentence.  Because Click was in the primary custody of the state during the federal arraignment process, her jail time counted toward her *state* sentence and statutorily cannot be applied to her federal sentence. Contrary to Click's assertions, § 3585(b) does not yield a different result.

As to the two months Petitioner spent in state custody pending transfer to FPC Alderson, Click does not show failure to receive credit on her federal sentence under the concurrent part of the Judgment.  The tendered Sentence Monitoring Computation Data Sheet indicates that the sentence imposition date (July 12, 2010) is the earliest date that can be used to calculate the aggregate term.  DE #73-7.   Click does not show that the post-judgment but pre-federal transfer two months for which she seeks credit has not already been applied to her sentence.  Additionally, BOP regulations require:

> Regardless of whether the court orders the federal sentence to be served consecutively to, or concurrently with, the non-federal non-existent or undischarged term of imprisonment, the prisoner shall be returned to the non-federal jurisdiction until the prisoner is released (completes the undischarged term of imprisonment) from the non-federal term.

*Sentence Computation Manual* at 73-74, *available at*

http://www.bop.gov/policy/progstat/5880_028.pdf.

As the Commonwealth paroled Click on September 28, 2010, the two months (presumably, August and September) Click spent at the Kentucky Correctional Institute for Woman were in accordance with federal prison regulations.  However, the Court

lacks sufficient information to fully evaluate the claim because Click does not document the dates (indeed, she references 2011 dates) and does not show that BOP officials failed to begin calculating the aggregate term date on July 12, 2010, the date of the federal judgment.  She simply provides nothing in support of her claim for the credit.

### C. U.S.S.G. § 5G1.3(b) Credit

Click next argues that the Court should apply 1 year, 9 months, and 25 days credit to her current federal sentence.  DE #73 (Motion); DE #73 (Memorandum) at 8-9. Specifically, Defendant asserts that she faces "double punishment" if the time does not count toward her federal sentence because she received a two-level increase for possession of a firearm.  DE #73 (Memorandum) at 8-9; DE #35 (Plea Agreement) at 3. In support of the request, Click alleges only that "[t]his increase in her offense level resulted from the sale of a pistol by one of Ms. Click's co-defendants to the CI working with the ATF and KSP."  DE #73-1 (Memorandum) at 9.  Click seeks adjustment under §5G1.3(b).

The 2009[12] version of the United States Sentencing Guideline § 5G1.3 provided:

Imposition of a Sentence on a Defendant Subject to an Undischarged Term of Imprisonment

(a) If the instant offense was committed while the defendant was serving a term of imprisonment (including work release, furlough, or escape status) or after sentencing for, but before commencing service of, such term of imprisonment, the sentence for the instant offense shall be imposed to run consecutively to the undischarged term of imprisonment.

(b) If subsection (a) does not apply, and a term of imprisonment resulted from another offense that is relevant conduct to the instant offense of conviction under the provisions of subsections (a)(1), (a)(2), or (a)(3) of §1B1.3 (Relevant Conduct) and that was the basis for an increase in the

---

[12] The Presentence Investigation Report (PIR), adopted by the Court at sentencing, indicates that Defendant's calculations reflect the 2009 version of the United States Sentencing Guidelines.

offense level for the instant offense under Chapter Two (Offense Conduct) or Chapter Three (Adjustments), the sentence for the instant offense shall be imposed as follows:

(1) the court shall adjust the sentence for any period of imprisonment already served on the undischarged term of imprisonment if the court determines that such period of imprisonment will not be credited to the federal sentence by the Bureau of Prisons; and

(2) the sentence for the instant offense shall be imposed to run concurrently to the remainder of the undischarged term of imprisonment.

(c) (Policy Statement) In any other case involving an undischarged term of imprisonment, the sentence for the instant offense may be imposed to run concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense.

U.S.S.G. § 5G1.3 (2009 Ed.)

Click does not appear to be entitled to relief. She seemingly blends two claims together, citing both a 2008 state conviction and the two-level firearm enhancement as grounds for the relief request.  The precise nature of her claim relative to the gun is unclear, although she indicates that she "was facing punishment for the same conduct in two separate prosecutions (state and federal)."

 Subsection (b) requires adjustment at sentencing, as to an undischarged term of imprisonment, only if the conduct that resulted in the increased offense level qualifies as relevant conduct under subsections (a)(1), (a)(2), or (a)(3) of § 1B1.3.  The PIR, to which Defendant did not object, states, in reference to the 2008 trafficking conduct:

This conduct was not considered part of the relevant conduct to the instant offense because it involved trafficking in cocaine.  There is not an instance of cocaine being trafficked as part of the instant offense.   Had the defendant been only convicted [of] trafficking in pills, then this conduct could be considered as relevant conduct in the instant offense and it would not be counted pursuant to U.S.S.G. §4A1.2(a)(1).

19

Presentence Investigation Report at 7.   Click did not criticize the USPO's calculation at sentencing.

Simply put, the 2008 state conviction for cocaine was not relevant conduct federally, because it involved a distinct substance.   This means § 5G1.3 does not apply. As to the gun enhancement, the gun did not result in a state term of imprisonment, removing that issue as a § 5G1.3 concern.   Click's arguments fail.

Judge Bunning undoubtedly appreciates the federal/state dynamics of sentencing credit and would have known that federal credit for state time could not commence until the date of sentencing.   The fact that Judge Bunning ran 36 months concurrently does not mean he only intended Click to serve 2 years in exclusive federal custody.   It simply signifies that he wanted Click to gain the benefit of federal credit for post-sentencing incarceration on the state term, and that Click serve no more than 60 total months from July of 2010.   The Judge would not have known or had any control over when the state chose to **parole** Click, thus effecting custodial transfer.

### D. U.S.S.G. § 4A1.1(e) Credit

Click also seeks a decrease in her criminal history points[13] based on an amendment to the United States Sentencing Guidelines that went into effect **after** her sentencing.   DE #73 (Motion); DE #73-1 (Memorandum) at 10.   Defendant specifically alleges that 2010 Guideline Amendment 742 should result in a 2-level decrease to her score because she "has already served state prison time for the criminal history that

---

[13] Click's true request in this regard is unclear.   She asks the Court to "decrease her offense level by two (2) levels as per U.S.S.G. § 4A1.1(e)," DE #73-1 (Memorandum) at 8, but she confuses the criminal history score calculation and offense level calculation. To the extent Click seeks an offense level decrease based on the firearm enhancement, she is not entitled to relief.   *See infra* at IV.F.   Further, however, for the reasons stated, she also is not entitled to a reduction in her criminal history points.

warranted the two (2) level increase of her offense level in the corresponding federal

case." DE #73-1 (Memorandum) at 10.

Indeed, § 4A1.1(e) of the 2009 Guidelines added recency points to a criminal

history score. *See* U.S.S.G. § 4A1.1(e) (2009 Ed.) ("Add 2 points if the defendant

committed the instant offense less than two years after release from imprisonment on a

sentence counted under (a) or (b) or while in imprisonment or escape status on such a

sentence."). However, Click does not identify where she received recency points. The

PIR awarded a total of 5 criminal history points. She received 3 points for the 2008

trafficking convictions pursuant to § 4A1.1(a) and 2 points under § 4A1.1(b) for a 2005

trafficking conviction. She did not receive any points pursuant to § 4A1.1(e) and is not

entitled to relief.[14] She articulates no other basis for a reduction.

*E. High School Diploma Credit*

Click next asserts that she is entitled to "satisfactory behavior" credit because she

is a high school graduate. DE #73 (Motion) at 1; DE #73-1 (Memorandum) at 10-11. She

---

[14] Even if the PIR had applied recency points to Click's criminal history, she would not
be entitled to relief. The Sentencing Commission removed the application of recency
points in 2010, but "the amendment is not retroactive to a sentence imposed prior to its
effective date, November 1, 2010." *United States v. Sandoval-Campos*, 452 Fed. App'x
486, 487 (5th Cir. 2011) (citing U.S.S.G. §1B1.10(c)); *see also United States v. Diaz*, 670
F.3d 332 (1st Cir. 2012) (finding Amendment 742 not retroactive and upholding the
application of recency points when the district judge knew about the pending
amendment; *United States v. Massey*, 663 F.3d 852, 861 (6th Cir. 2011) (upholding the
application of pre-amendment recency points and noting: "A sentence is not erroneous
when it is properly imposed based on the Guidelines in effect at the time of sentencing."
(citation omitted))   Judge Bunning sentenced Click on July 12, 2010. Because
Defendant was sentenced prior to the effective date and the amendment is not retroactive,
she would not be entitled to a reduction. She does not here argue for amendment
retroactivity, and she did not argue for prospective application at sentencing. This is
merely an academic point, however, because Click did not suffer the points assessment.

attaches a copy of her high school diploma in support (DE #73-18), requesting 54 days credit for each year of her sentence.   DE #73-1 (Memorandum) at 10-11.

18 U.S.C. §3624(b)(1) permits the Bureau of Prisons to award annual satisfactory behavior credit, which includes an evaluation of a prisoner's progress toward a high school diploma or equivalent degree.  However, the plain language of the section specifically limits credit to accomplishment during the *incarcerated period*: "In awarding credit under this section, the Bureau shall consider whether the prisoner, *during the relevant period*, has earned, or is making satisfactory progress toward earning, a high school diploma or equivalent degree."  *Id.* (emphasis added).   Click did not earn her diploma while imprisoned on the current sentence; she graduated from Paul G. Blazer High School in Ashland, Kentucky, in 1998.  DE #73-1 (Memorandum) at 10.

Completion of a secondary education is only a factor the Bureau of Prisons considers when awarding good time credit; a prisoner must also display exemplary compliance with institutional rules.  18 U.S.C. § 3624(b)(1) ("[A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence . . . subject to determination by the Bureau of Prisons that, during that year, the prison has displayed exemplary compliance with institutional disciplinary regulations.").  Thus, to the extent she is already a high school graduate, that factor is simply inapplicable to Click; she is not entitled to credit based *solely* on her status as a high school graduate.  The goal is educational attainment, which Click satisfied prior to her incarceration.

Petitioner makes no claim of wrongful credit denial but instead seeks automatic application of 54 days credit to each year of her sentence as a result of her 1998 high school diploma.  Click alleges that she has maintained "a history of exemplary conduct free of any disciplinary infractions throughout her terms of incarceration." DE #73-1 (Memorandum) at 10-11.  The record reflects that, as of September 17, 2012, Click had served 26 months and 5 days and had earned 204 days of jail credit.  DE #85-1 (Correspondence) at 4.[15]  Click may continue to accrue credit toward her overall sentence, but she demonstrates no basis for credit adjustment by her present argument. The Court notes that courts have denied efforts to interpret § 3624(b) as prospectively awarding good credit time.  *Williams v. Lamanna*, 20 Fed. App'x 260, 261 (6th Cir. 2001) (unpublished) ("The statute clearly states that good conduct time is award on time served by the inmate, not on the time that might potentially be served by the inmate."). Click is not entitled to any prospective application of good time credit solely because of her status as a high school graduate, and the claim is meritless.

### F. Gun Enhancement

Finally, Click seeks a 2-level decrease of her offense level based on the gun enhancement.  DE #73 (Motion) at 1; DE #73-1 (Memorandum) at 13.  The motion does not articulate any specific ground for the request, although the reply indicates that the language of the plea agreement permits Click's argument.  DE #80 at 8 ("There is not language included in [paragraph 5 of the plea agreement] that limits the scope or time

---

[15] The referenced document was submitted as an attachment to a letter written by Click's counsel well after briefing on the instant motion closed.  *See* DE ##85-85-1.The Court considers the document to ensure a complete record and to better understand Defendant's current custodial status.

frame in which Ms. Click may propose alternative sentencing calculations, including calculations that could reduce her sentence.").

Plainly, Click is not entitled to relief. The plea agreement includes the 2-level increase based on possession of a dangerous firearm. *See* DE #35 (Plea Agreement) at 3, ¶ 5(d) ("Pursuant to U.S.S.G. § 2D1.1(b)(1), increase the offense level by 2 levels because a dangerous weapon, that is, a firearm was possessed."). At rearraignment, Click confirmed reading and signing the plea agreement and denied existence of any promises not contained within the agreement and sealed supplement. DE #66 (Transcript) at 15-16. She acknowledged the document as her plea agreement. AUSA Denney referenced in the enhancement in his oral summary, and Defendant stated her understanding. In addressing the content of paragraph 5 with Defendant, Judge Bunning specifically mentioned the gun enhancement, and Click did not object but again confirmed her understanding. *Id.* at 26.

The record reflects voluntary and verified answers at rearraignment. Click's unsupported allegations about her understanding of the plea agreement are unavailing against the record.

## V.    Certificate of Appealability

As to Click's § 2255 claims[16], a Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *Miller-El v. Cockrell*, 123 S.

---

[16] Petitions made pursuant to § 2241 do not require a certificate of appealability as an appeal predicate. *Mendietas v. Lamanna*, 187 F.3d 636, at *1 (6th Cir. 1999) (table) (citing 28 U.S.C. § 2253(c)(1); *Bradshaw v. Story*, 86 F.3d 164, 166 (10th Cir. 1996)).

Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604.

Defendant has not made a "substantial showing" as to any claimed denial of rights. She entered into the plea agreement knowingly, voluntarily, and intelligently. Further, as to the *Strickland* claim, she has not shown even an arguable basis as to a right of relief. Accordingly, the Court recommends that the District Court deny a Certificate of Appealability.

## VI.     Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that the District Judge:

(1) **CONSTRUE** Click's petition as a hybrid filing under both 28 U.S.C. § 2255 and 28 U.S.C. § 2241;

(2) **GRANT** the United States's motion to dismiss (DE #75) as it relates to the claims arising under §2255 and **NOT** issue a certificate of appealability; and

(3) **DISMISS WITHOUT PREJUDICE** the remainder of Click's claims, those

arising under §2241.  The Court lacks jurisdiction to review Click's petition,

and the record does not support transfer of the action.

\*   \*   \*   \*   \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2255 Proceedings for the United States District Courts, Rule 8(b).  Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 10th day of December, 2012.

Signed By:

*Robert E. Wier*   R&W

United States Magistrate Judge

26